## DALZELL v. THE CELTIC.

### THE PATRIOTIC.

#### No. 140–380.

United States District Court
S. D. New York.

Feb. 24, 1949.

Burlingham, Veeder, Clark & Hupper, New York City, for libellant.

Mahar & Mason, New York City, for claimant.

CLIFFORD, District Judge.

This is a cause of collision, the details of which will be more fully set forth in the findings of fact annexed hereto. In brief, the following are the relevant circumstances. The tug Patriotic, owned by the libellant, was proceeding at about 3:00 a. m. on October 26, 1944, from Bayway, New Jersey, in an easterly direction along the body of water known as the Kill Von Kull, when she approached a dredge which was located on the northerly side of the navigable passageway. The southerly side of the passageway was marked by a row of pilings. The space between the southerly side of the dredge and the row of pilings was between 150 and 250 feet. Passage could not be made to the northerly of the dredge because of the running of the duct from the dredge to an area north of the dredge where the sludge was being pumped.

Approaching in the opposite direction, and on the easterly end of the dredge, was the tug Celtic, owned by the claimant, having in tow the tank barge Essex No. 4, the latter made fast to the port side of the Celtic with her stem extending some 40 feet ahead of the stem of the Celtic.

The Patriotic was showing her running lights, with regulation white lights forward and aft. The Celtic was showing her running lights, a white light forward, and two staff lights indicating a tow alongside. The Essex No. 4 showed one white light at the middle point of her bow, on a staff, and one white light on the port side of a staff over the deckhouse. The dredge showed a series of bright lights on both the easterly and westerly ends.

Port-to-port whistle signals were exchanged between the two tugs. Despite this fact, several minutes later the forward port corner of the Essex No. 4 collided with the port bow and side of the Patriotic.

Libellant contends that the collision occurred far over on the Patriotic's side of the passageway, several feet away from the row of pilings. Claimant contends that it occurred on the Celtic's side of the passageway, close to the southerly side of the dredge.

Libellant further contends that the collision was caused by the failure of the Celtic to carry white and red lights on the port bow of the Essex, since her own port running light was allegedly hidden by the Essex, by the Celtic's failure to keep a good lookout, by failing to keep to starboard, and by failure to reverse her engines.

Claimant contends that the Master of the Patriotic was blinded by the lights on the dredge, that nevertheless there was failure to alert a bow lookout as to possible danger, and that despite the port-to-port signals, the Patriotic suddenly shifted her helm to port and then back to starboard, bringing her over into the path of the Celtic, that the latter's lights and those of the Essex were plainly visible, and the Captain of the Celtic had clear vision from his pilothouse.

With respect to the issue of location of the point of collision, the Court is of the opinion that the vessels collided nearer to the dredge than to the row of pilings, The Barge Captain testified that when he came from his cabin immediately on hearing and

feeling the impact, he at first thought that they had hit the dredge, which was, he said, close by. Moreover, libellant's own witness testified that a shift of three or four points to starboard had been made close to the time of collision. If the Patriotic had been keeping close to the pilings, such a shift in course would have brought her into contact with the pilings before any collision between the vessels could have taken place. Claimant's reconciliation of libellant's witnesses' testimony, namely, that by the time those on board the Patriotic were able to observe where they were after the collision took place they undoubtedly had moved in close to the pilings, is quite convincing.

As for the question involving the adequacy of the lights on board the Celtic and Essex No. 4, it is significant that libellant's witness, the Captain of the Patriotic, admitted that he made no mention of improperly placed lights on board the Celtic or the Essex as having contributed to the collision in his conversation with the Celtic Captain immediately after the incident. On the other hand, it seems highly probable that the Captain of the Patriotic was blinded somewhat by the several bright lights and reflectors, which were concentrated on the westerly side of the dredge. In fact, the Patriotic's Captain admitted on cross examination that he could not see beyond the dredge. Despite this fact, the deckhand of the Patriotic, stationed on her bow, was, immediately prior to the time when the Celtic was seen or could have been seen, busily engaged in straightening lines. He was not serving as a lookout, had not been instructed to keep a sharp lookout, and in fact made no report whatsoever upon the Celtic and her tow coming within his range of vision.

There was testimony to the effect that shortly before the collision the Patriotic made two changes in course. What the reason therefor could be does not appear from the viewpoint of logic. Yet the witnesses appeared to be telling the truth as they recalled it, and even the Patriotic's Captain stated that a change of course to starboard was made after the port-to-port signals had been exchanged.

What these variant versions and their supporting testimony add up to in the mind of this Court is merely that libellant has not successfully upheld his burden of proof.

Therefore, in accordance with the above opinion, the Court makes the following:

### Findings of Fact.

1. At all times relevant hereto the Patriotic was owned by the libellant and the Celtic was owned by claimant.

2. The statistics pertaining to the vessels involved are as follows: Patriotic— 113 gross tons, 77 net tons, 81.3 feet in length, 201 feet in beam, 9.2 feet in inside depth; Celtic—121 gross tons, 82 net tons, 83.5 feet in length, 21.5 feet in beam, 11.2 feet in inside depth; Essex No. 4—490 gross and net tons, 128 feet in length, 36 feet in beam, inside depth of 11.2 feet.

3. On October 26, 1944, at about 3:00 a. m., the tug Patriotic was proceeding easterly through the channel southeasterly of Elizabethport, New Jersey, in the southern part of Newark Bay between Arthur Kill and Kill Van Kull, immediately westerly of Shooters Island.

4. At the time above mentioned, the Celtic, a motor tug, with the tank barge Essex No. 4 in tow, was proceeding in a westerly direction in the same area, the barge being made fast to the port side of the tug with her bow extending ahead of the stem of the Celtic for about 40 feet.

5. At the time and place above mentioned, the weather was clear, the visibility good for lights, with the wind and tidal current being negligible.

6. A suction dredge was moored southeast of Elizabethport with a pipe line extending to the north obstructing the north side of the channel but leaving a passageway of 150 feet to 250 feet wide on the south side of the channel, which south side was marked by a line of pilings running parallel to the southerly shore.

7. The Patriotic was carrying regulation running lights and the usual white lights forward and aft; the Celtic was carrying regulation running lights, a white light forward, and two staff lights; the Essex No. 4 was carrying one white light at her mid-bow and one white light on the

port side of her staff over the pilothouse; the dredge carried a series of bright white lights, accompanied by reflectors, on both ends, easterly and westerly. All of the above lights were in operation at the time above mentioned.

8. When the Celtic and Essex were approaching the dredge, being several hundred feet easterly of the Patriotic, which was also approaching the dredge from the west, one whistle passing signals were exchanged, requiring a port to port passage; thereupon both the Celtic and the Patriotic proceeded at one bell speed until the time of collision.

9. As the Patriotic drew nearer the dredge, visibility of objects easterly of the dredge, so far as the Captain of the Patriotic was concerned, was interfered with by the glare of lights on the westerly end of the dredge; notwithstanding this fact, the deckhand on the bow of the Patriotic was not ordered to keep any lookout and did not in fact see the Celtic and her tow as soon as they could have been seen.

10. After the port-to-port whistle signals were exchanged, the Patriotic made a change of course to port and back again to starboard, causing her to be in the vicinity of the dredge, and to bring into contact her port side with the forward port corner of the Essex No. 4.

11. Sufficient lights on board both the Celtic and the Essex No. 4 were visible or should have been visible to those on the Patriotic to have given timely notice of their position and course.

12. The view of the Captain of the Celtic was not obstructed by the Essex No. 4 or objects on the deck of either the Essex No. 4 or the Celtic in sufficient degree to interfere with the proper piloting of the Celtic and her tow.

### Conclusions of Law.

1. The collision was caused solely by the negligence of the Patriotic.

2. There was no fault on the part of the Celtic contributing to the collision.

3. The libel should be dismissed with costs in favor of the claimant Essex Transportation Co. Inc.